UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHIN CREST PTE, LTD, ET AL.,

    Plaintiffs,

v.    Case No. 8:07-cv-1433-T-24 MAP

AIU INSURANCE COMPANY,

    Defendant.
_____/

## ORDER

This cause comes before the Court on two motions: (1) Plaintiffs' Motion to Alter or Amend the Judgment and for Reconsideration (Doc. No. 91), which Defendant opposes (Doc. No. 95); and (2) Defendant's Motion to Strike (Doc. No. 96), which Plaintiffs oppose (Doc. No. 99). For the reasons explained below, Plaintiffs' motion is denied and Defendant's motion is granted.

**I. Background**

On April 21, 2001, Doreen Blair was sitting on a dock in a chair manufactured and/or distributed by Shin Crest and sold by Sam's Club and fell into a dry lake-bed and was seriously injured. Thereafter, in 2003, Mrs. Blair and her husband filed suit against Sam's Club ("Blair I suit"), in which they claimed that the chair was defective and caused the fall. Sam's Club was an additional insured under Shin Crest's $2 million insurance policy that was issued by Defendant AIU Insurance Company ("AIU"), and as such, AIU defended the claim against Sam's Club.

Sam's Club, the Blairs, and Shin Crest attended mediation in the Blair I suit on January 13, 2005; however, the Blairs had not filed a lawsuit against Shin Crest at that time. At the mediation, the Blairs made a settlement demand of $20 million. In response, AIU countered

with a structured settlement of $250,000 up front, plus $2,000 a month for the rest of Mrs. Blair's life. (Doc. No. 72, Ex. 14). The Blairs reduced their demand to $19 million, and AIU increased its offer to $250,000 up front, plus $2,500 a month for the rest of Mrs. Blair's life (a settlement offer that had a value of approximately $625,000). (Doc. No. 72, Ex. 14). At some point, the Blairs discussed the possibility of reducing their demand to $5 to $6 million. (Doc. No. 72, Ex. 14). Eventually, AIU decided not to continue mediation negotiations, and an impasse was declared. (Doc. No. 73: Gannon depo, p. 171).

Despite the impasse at mediation, negotiations continued. Five days later, on January 18, 2005, the Blairs offered to settle their claim against Sam's Club for $4 million. (Doc. No. 72, Ex. 16). AIU responded that it was only willing to pay $1 million, and that was contingent on a release of both Sam's Club and Shin Crest. (Doc. No. 72, Ex. 16). Thereafter, on January 21, 2005, the Blairs offered to settle their claim against Sam's Club for $2 million, but they specifically stated that they would not release their claim against Shin Crest. (Doc. No. 72, Ex. 17). On February 8, 2005, in response to the Blairs' $2 million settlement offer, AIU responded that the insurance policy was an eroding policy (the $2 million was being reduced by the cost of other claims and AIU's defense of the Blairs' claims) with less than $1.8 million left, and AIU reiterated its offer to settle for $1 million. (Doc. No. 72, Ex. 17).

On February 11, 2005, the Blairs offered to settle their claim against Sam's Club for the remaining policy limits, but again, they stated that Shin Crest would not be released. (Doc. No. 72, Ex. 18). On February 18, 2005, AIU asked the Blairs whether they would consider a global settlement for the policy limits that would include Shin Crest, but they were adamant that they would not. (Doc. No. 72, Ex. 19, p. 10). Additionally, Sam's Club made a demand that the

claim against it be settled for the remaining policy limits. (Doc. No. 72, Ex. 20). AIU ultimately determined that it should settle the case on behalf of Sam's Club only, because that was the only settlement that it could get. (Doc. No. 72, Ex. 18).

On February 21, 2005, AIU informed Shin Crest of the settlement offer for the remaining policy limits and of AIU's intention of accepting it in order to settle the claim against Sam's Club. (Doc. No. 73: Ruey depo, p. 124-25; Doc. No. 72, Ex. 20). After learning this, on February 23, 2005, Shin Crest wrote a letter to AIU objecting to the proposed settlement. (Doc. No. 73: Ruey depo, p. 119). When Betty Ruey from Shin Crest spoke with AIU on February 24, 2005 to object to the proposed settlement, AIU told her that it was too late, as AIU had already accepted the offer to settle. (Doc. No. 63: Ruey depo, p. 114-15, 123-25).

On March 22, 2005, after settling their claim against Sam's Club, the Blairs filed suit against Shin Crest ("Blair II suit"). Because the policy limits had been exhausted by the settlement of the Blair I suit, AIU would not defend Shin Crest in the Blair II suit. In October of 2007, Shin Crest and the Blairs entered into a stipulated judgment for $12 million, in which the Blairs agreed to not attempt to collect the judgment from Shin Crest as long as Shin Crest pursued a bad faith claim against AIU, with the Blairs sharing in any damages that were awarded. (Doc. No. 72, Ex. 21). Thereafter, on August 14, 2007, Shin Crest filed the instant case against AIU, in which it alleges that AIU acted in bad faith in the handling of the Blairs' claims.

AIU moved for summary judgment on the bad faith claim on January 9, 2009. (Doc. No. 72). This Court granted AIU summary judgment, finding that under the facts of the case, there was no obligation on AIU to offer the policy limits at the mediation in an attempt to settle the

3

claims against both Sam's Club and Shin Crest. (Doc. No. 83). Additionally, the Court found that AIU did not act in bad faith, under the facts of this case, when it exhausted the policy limits in order to settle the claim against Sam's Club, leaving Shin Crest exposed to liability on the Blairs' claim, because AIU had already attempted to obtain a release for Shin Crest and it was clear that there was no reasonable possibility that one could be obtained. (Doc. No. 83).

Thereafter, Plaintiffs filed the instant motion for reconsideration, and they filed two expert reports and an expert deposition transcript in support of the motion. AIU opposed the motion for reconsideration and filed the instant motion to strike the filing of the two expert reports and deposition transcript.

## II. Standard of Review for Motion for Reconsideration

Plaintiffs move for reconsideration under Federal Rule of Civil Procedure 59(e). This Court's review is as follows:

> The only grounds for granting [a Rule 59(e)] motion are newly-discovered evidence or manifest errors of law or fact. Rule 59(e) may not be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.

Sherrod v. Palm Beach County School District, 237 Fed. Appx. 423, 424-25 (11th Cir. 2007)(internal quotation marks and citations omitted).

## III. Motion to Strike

In connection with their motion for reconsideration, Plaintiffs filed two expert reports and an expert deposition transcript. (Doc. No. 89, 90, 92, 93). In response, AIU filed the instant motion to strike the filing of the two expert reports and deposition transcript, arguing that the documents were not newly discovered evidence, and as such, they cannot be considered in connection with the motion for reconsideration. This Court agrees.

4

The export reports were dated November 30, 2008 and December 1, 2008. The deposition was taken on March 6, 2009. This Court's order granting summary judgment was entered on March 26, 2009–after the expert reports were issued and after the deposition was taken. As such, those documents are not newly discovered evidence and cannot be considered in connection with the motion for reconsideration. See In re Kellogg, 197 F.3d 1116, 1120 (11th Cir. 1999)(refusing to consider newly submitted evidence in connection with a motion to reconsider because the evidence was not newly discovered). Accordingly, the Court grants AIU's motion to strike these filings.

## IV. Motion for Reconsideration

In their motion for reconsideration, Plaintiffs argue that this Court made many "manifest errors of law," and they cite nine specific instances. (Doc. No. 91, p. 3). However, these alleged "manifest errors of law" basically consist of Plaintiffs' disagreement with the correctness of the Court's order granting summary judgment. These arguments were considered and rejected by the Court in its summary judgment order.[1] The only argument that the Court will address in detail is alleged error #9, in which Plaintiffs contend that this Court disregarded AIU's failure to advise and communicate with Shin Crest regarding the settlement of the Blairs' claims as a basis for their bad faith claim.[2]

---

[1] Alleged error #8, in which Plaintiffs argue that there was a factual dispute, as evidenced by conflicting expert reports, was not addressed in the Court's summary judgment order because it was not raised in Plaintiffs' response to AIU's motion for summary judgment. This argument is based on evidence that existed prior to the Court's summary judgment ruling (but which was not filed with the Court at that time), and as such, it is improper to consider such evidence at this juncture.

[2] The Court notes that in alleged error #1, Plaintiffs argue that this Court misread Powell v. Prudential Property & Casualty Ins. Co., 584 So. 2d 12 (Fla. 3d DCA 1991), and that "the

5

The Court rejects Plaintiffs' "failure to advise and communicate" argument for two reasons. First, Plaintiffs did not raise this argument in response to AIU's motion for summary judgment. This Court acknowledges that Plaintiffs made passing references (in their response in opposition to AIU's motion for summary judgment) to the general duty to keep an insured informed of the claim resolution process, but Plaintiffs did not directly argue that summary judgment was inappropriate because AIU acted in bad faith by failing to keep Shin Crest informed about the settlement of the Blairs' claims.

Second, Plaintiffs' argument–that summary judgment was improper because AIU failed to advise and communicate with Shin Crest regarding the settlement of the Blairs' claims–has no merit. In their motion for reconsideration, Plaintiffs argue that AIU acted in bad faith when the following occurred: (1) AIU never advised Shin Crest that it had evaluated the case as extremely

---

affirmative duty to settle is not confined to cases where the insured has clear liability." (Doc. No. 91, p. 3). It appears, however, that Plaintiffs have misread Powell, because that case does not support their argument that AIU acted in bad faith when it failed to offer the policy limits at the mediation in order to settle the claims against both Sam's Club and Shin Crest. In Powell, the court stated that "[w]here liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations." Id. at 14. Nowhere in Powell does the court state that a duty to initiate settlement negotiations equates to a duty to offer the policy limits.

Additionally, in alleged error #6, Plaintiffs argue that the Court misread Contreras v. U.S. Security Ins. Co., 927 So. 2d 16 (Fla. 4th DCA 2006), when this Court cited that case in support of its conclusion that AIU did not act in bad faith when it exhausted its policy limits in order to settle the Blairs' claim against Sam's Club. In Contreras, the court stated that once it became clear that the plaintiff would not settle its claim against Dale (one of the insureds), the insurance company fulfilled its obligation of good faith to Dale, and thereafter, the insurance company was obligated to take the necessary steps to settle the claim against the other insured. See id. at 21. In a concurring opinion, Judge Klein stated: "If an insurer is given a reasonable period of time in which to settle . . . and it is entirely clear that within that time the plaintiff is not going to release the driver [Dale], the insurer as a matter of law cannot have breached a duty of good faith to the driver. The majority opinion will benefit insurers by clarifying that, if they are unable to obtain a release for all defendants, they can still settle with one without being in bad faith." Id. at 22.

6

dangerous and that the case had a possible damages exposure of $8 to $12 million; (2) AIU left Shin Crest wholly uninformed about the claim resolution process until it was too late and the claims against Sam's Club had already been settled; and (3) AIU misled Shin Crest into believing that AIU and its defense attorneys were acting to protect Shin Crest's interests. As explained below, the Court rejects these arguments.

With regards to Plaintiffs' contention that AIU failed to explain that Shin Crest risked tremendous exposure, this argument is belied by the deposition testimony of Betty Ruey, a Shin Crest representative. Specifically, Ruey states: (1) she was informed on November 17, 2003 of the potential excess exposure caused by the Blairs' claims; (2) she was informed on September 17, 2004 that the value of the Blairs' claims exceeded $4 million; (3) she was informed again on December 21, 2004 of the potential excess exposure; and (4) she was informed on January 20, 2005 that the value of the Blairs' claims was estimated to be between $6 and $8 million and that the Blairs were demanding $4 million to settle their claims against Sam's Club. (Doc. No. 73: Ruey depo, p. 40-43, 59-61, 68-69, 86-87, 93-95; Doc. No. 72-16, p. 2 of 7).

Likewise, Plaintiffs' argument that AIU left Shin Crest wholly uninformed about the claim resolution process until it was too late (after the claim against Sam's Club had already been settled) is belied by the deposition testimony of Ruey. Specifically, Ruey admits: (1) she was informed on January 20, 2005 that the Blairs offered to settle their claim against Sam's Club for $4 million; (2) on February 2, 2005, she requested that AIU not accept the Blairs' subsequent offer to settle their claim against Sam's Club for $2 million; (3) she received AIU's February 21, 2005 letter informing her of the proposed settlement of the Blairs' claim against Sam's Club for the policy limits, and she wrote a letter objecting to the proposed settlement on February 23,

7

2005; and (4) she spoke with AIU on February 24, 2005, after AIU had accepted the Blairs' offer to settle their claim against Sam's Club for the policy limits. (Doc. No. 73: Ruey depo, p. 93-95, 110, 114-119, 123-24; Doc. No. 72-16, p. 2 of 7; Doc. No. 72-21, p. 15 of 24).

The Court also rejects Plaintiffs' argument that AIU acted in bad faith because it misled Shin Crest into believing that AIU and its defense attorneys were acting to protect Shin Crest's interests. The flaw in this argument is that there is no evidence that AIU was not attempting to protect Shin Crest's interests. AIU attempted, unsuccessfully, to obtain a global release of the Blairs' claims against Sam's Club and Shin Crest at the mediation on January 13, 2005 and then again on January 18, 2005 and February 8, 2005 (Doc. No. 72, Ex 14, 16, 17). Additionally, on February 18, 2005, AIU attempted to obtain a global release of the Blairs' claims against Sam's Club and Shin Crest for the policy limits (Doc. No. 72, Ex. 19, p. 10). AIU attempted to protect Shin Crest's interests until it became clear that the only possible settlement that AIU would be able to obtain would be a settlement of the claims against Sam's Club for the policy limits.

Accordingly, the Court denies Plaintiffs' motion to reconsider and reaffirms its conclusion that, as a matter of law, AIU did not commit bad faith in its handling of the Blairs' claims. While the Court is not unmindful of the fact that Mrs. Blair was seriously injured, and if her injury was due to a defect in the chair, she was entitled to be compensated for her injury. However, the entities potentially at fault for her bodily injury are Sam's Club and Shin Crest, not AIU. It appears disingenuous to this Court for the Blairs to attempt to shift the liability for their injury to AIU (based on AIU's failure to settle their claim against Shin Crest) when the facts of this case are as follows: (1) prior to the exhaustion of the policy limits, the Blairs only sued Sam's Club; (2) liability was not clear; (3) the Blairs never made a demand for the policy limits

in exchange for a release of both Sam's Club and Shin Crest, and the Blairs rejected AIU's February 18, 2005 proposed settlement offer for the same (Doc. No. 72, Ex. 19, p. 10); (4) after agreeing to accept the policy limits to settle their claims against Sam's Club (and thus, after AIU no longer had a duty to defend Shin Crest), the Blairs filed suit against Shin Crest; and (5) thereafter, the Blairs and Shin Crest entered into a stipulated judgment for $12 million, with an agreement that the Blairs would not attempt to collect the judgment from Shin Crest as long as Shin Crest pursued a bad faith claim against AIU and shared any damages that were awarded (Doc. No. 72, Ex. 21, p. 24-35; Doc. No. 26, Ex. E).

## V. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Plaintiffs' Motion to Alter or Amend the Judgment and for Reconsideration (Doc. No. 91) is **DENIED**.

(2) Defendant's Motion to Strike (Doc. No. 96) is **GRANTED**. The Clerk is directed to **STRIKE** Documents 89, 90, 92, and 93 from the record and remove their images from the docket sheet.

**DONE AND ORDERED** at Tampa, Florida, this 22nd day of May, 2009.

*/s/ Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

9